*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. MCBRIDE, Minor.

UNPUBLISHED
January 13, 2026
3:32 PM

No. 372935
Calhoun Circuit Court
Family Division
LC No. 2021-002948-NA

Before: KOROBKIN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

The trial court terminated respondent's parental rights to the minor child, MM, under MCL 712A.19b(3)(c)(*i*) and (3)(j).[1] On appeal, respondent challenges the trial court's statutory ground, best-interest, and reasonable-effort determinations. We affirm.

## I. BACKGROUND

The Department of Health and Human Services (DHHS) initially petitioned to remove seven-year-old MM from her mother's care in October 2021, after MM disclosed sexual abuse by mother's boyfriend. MM was then placed with respondent and his girlfriend and her child, AW. However, DHHS soon learned that respondent had previously been convicted of third-degree criminal sexual conduct. He indicated to DHHS that the charge stemmed from a relationship he had when he was 17 years old with a 14-year-old girlfriend. In reality, the conviction was the result of respondent sexually abusing his four-year-old and seven-year-old foster sisters. While DHHS was learning the truth about respondent's criminal history, a forensic interviewer met with MM and discovered that respondent and his girlfriend would sometimes lock MM in a room and that respondent's girlfriend "would get mean" and "whoop" MM.

Additionally, a licensed psychologist evaluated MM and diagnosed her with post-traumatic stress disorder, child neglect, and child sexual abuse. The psychologist was concerned that there

---

[1] Respondent is MM's father. The trial court also terminated MM's mother's parental rights, but she is not a party to this appeal.

was a risk of sexual exploitation if MM were to live in respondent's home because of respondent's previous sexual abuse of a similarly aged child. According to the psychologist, MM needed a structured and predictable environment, with parental figures who had training about trauma. To that end, in January 2022, DHHS filed a petition against respondent, removed MM from his care, and placed her with relatives located over 200 miles away.

DHHS's goal at the beginning of the case was reunification. Respondent was required to complete sex offender treatment, engage in individual counseling, and attend parenting classes. Additionally, he was required to complete a safety plan to ensure that he would never be alone with a child and would not engage in physical discipline of MM. The psychologist also recommended that respondent and his girlfriend engage in a workbook with specific strategies "for reviewing past offense patterns, understanding, and identifying potential problems in the area of victims as well as defenders, risk issues, and the development of a relapse prevention plan."

Respondent was permitted to participate in supervised parenting visits with MM—two in-person and two virtual each month. Although DHHS provided respondent with gas cards to assist with his travel expenses, respondent repeatedly expressed concern about the costly and lengthy trips to see MM. The record is a little unclear about exactly how much gas money DHHS provided, but apparently respondent received $100 each month at first. Then, DHHS increased the gas-card value to $200 each month because of rising gas prices. At some point, though, DHHS ran out of funds for gas cards and consequently failed to provide any financial assistance for some of respondent's parenting visits. Eventually, DHHS resumed providing gas cards, but respondent contends that the cards he received throughout the proceedings never fully covered the cost of his trips.

During the pendency of this case, respondent's participation in services was inconsistent. In December 2023, DHHS moved to suspend respondent's parenting time and filed a petition seeking termination. The termination trial began in April 2024, with testimonies highlighting respondent's failure to consistently participate in counseling or to complete his safety planning. Additionally, DHHS produced evidence that respondent's parenting visits were having a negative impact on MM's mental health. MM eventually resisted virtual visits and refused to stay in the visitation room for in-person visits. She had "angry outbursts" after visits and got "physically aggressive" with her foster family. Her behavior improved after parenting time was suspended.

Due to various issues, the termination trial was continued several times. After the trial's conclusion in September 2024, the trial court found that the DHHS made reasonable efforts toward reunification, but respondent failed to participate in necessary services. The court determined that termination of respondent's parental rights was justified under MCL 712A.19b(3)(c)(*i*) and (3)(j) and was in MM's best interests, as MM needed finality and was in a positive preadoptive home. Respondent now appeals.

## II. ANALYSIS

### A. STATUTORY GROUNDS

First, respondent argues that the trial court erred by finding that statutory grounds existed for termination. We disagree.

To terminate parental rights, the trial court must find clear and convincing evidence of at least one statutory basis for termination under MCL 712A.19b(3). See *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). We review for clear error a trial court's factual findings and ultimate determination on the statutory grounds. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). Clear error exists if we are left with a definite and firm conviction that the trial court made a mistake, "giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

A ground for termination exists under MCL 712A.19b(3)(c)(*i*) if 182 or more days have passed since the initial dispositional order and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." See also *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). Termination is warranted under this statutory ground when "the totality of the evidence amply supports" the trial court's finding that the parent has not achieved "any meaningful change in the conditions" that led to the trial court exercising jurisdiction over the child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

In this case, more than 182 days had passed since the initial dispositional order, entered in May 2022, and the termination of parental rights in September 2024. See *Atchley*, 341 Mich App at 343. Further, the conditions that led to adjudication continued to exist, and there was no reasonable likelihood that respondent would rectify the conditions in a reasonable time. See *id*. Respondent stopped individual counseling in September 2022 after only four sessions. He reengaged in counseling in May 2024, only after DHHS sought termination. Accordingly, there is no indication that respondent was doing any meaningful work to address his risk of recidivism or emotional instability. Likewise, the record does not demonstrate that respondent fully admitted to, or accepted responsibility for, the allegations that MM made about him locking her in a bedroom.

There also is no indication that respondent was following a safety plan, particularly with his girlfriend's child, AW. The record demonstrates that respondent was alone with AW for some visits with MM and that he cared for AW alone at night while respondent's girlfriend worked. Additionally, in August and September 2024—a few months into the termination proceedings—respondent's girlfriend was incarcerated. Respondent failed to inform DHHS about this, which was important information because she was a critical part of his safety plan. Along the same lines, mother's sister testified that she and her child lived with respondent at one point, but she was not aware that he was convicted for the sexual assault of a young child. Accordingly, the totality of the evidence supports the trial court's determination that respondent was unlikely to follow a safety plan and had not achieved "any meaningful change in the conditions" that led to the trial court exercising jurisdiction over MM. See *In re Williams*, 286 Mich App at 272.

Next, a ground for termination exists under MCL 712A.19b(3)(j) if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Termination is proper under this statutory ground if there is a potential of physical or emotional harm to the child. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). "[A] parent's failure to comply with the terms and conditions of his or her service is evidence that the child will be harmed if returned to the parent's home." *White*, 303 Mich App at 711.

As with the previous basis for termination, the trial court did not err by finding that there was a reasonable likelihood of harm to MM if she returned to respondent's care. MM demonstrated emotional repercussions following her visits with respondent, ultimately resulting in the suspension of his parenting time. Further, MM expressed not wanting to engage in visits with respondent, and her behavior improved after the parenting-time suspension. This demonstrates a risk of emotional harm to MM if she were returned to respondent. See *In re Hudson*, 294 Mich App at 268.

Further, respondent sexually abused two young girls and was repeatedly dishonest about it. Although respondent eventually created a safety plan in May 2024, as discussed, there was evidence that he would not follow the plan or that the plan failed to ensure that he was not alone with children. Ultimately, respondent's lack of consistent engagement in services and safety planning, considering his concerning history, supports the trial court's conclusion. See *White*, 303 Mich App at 711. Therefore, the trial court did not clearly err by finding that at least one statutory ground existed to warrant termination.

## B. BEST INTERESTS

Next, respondent argues that the trial court erred by finding that termination was in MM's best interests. We disagree.

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). We review for clear error a trial court's best-interest determination. *In re Sanborn*, 337 Mich App at 276.

When determining whether termination is in a child's best interests, the trial court may consider evidence that includes "the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Atchley*, 341 Mich App at 346 (quotation marks and citation omitted). Further, the trial court may consider "the length of time the child was in care[;] the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all[;] and compliance with the case service plan." *Id*. at 346-347 (quotation marks and citation omitted). "[B]ecause a child's placement with a relative weigh against termination," a trial court must explicitly consider that fact when determining whether termination is in the child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 133 (2012). Further, the trial court must consider individually each child's best interests. *Id*. at 42.

In this case, we conclude that the trial court did not err by determining that termination was in MM's best interests. MM exhibited a strong need for permanency, particularly considering the psychology expert's explanation that MM needed "a clear, stable, and nurturing environment" and that respondent lacked training to address her trauma. Further, MM was doing well in her placement, and her foster parents were interested in adoption. See *In re Olive/Metts Minors*, 297 Mich App at 41-42; *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011). And although respondent had complied with parts of his service plan, he did not consistently engage in counseling until the termination proceedings were already underway. It was proper for the trial

-4-

court to consider respondent's incomplete participation in, and lack of benefit from, services. See *In re White*, 303 Mich App at 714.

Moreover, the trial court properly considered that MM was in a relative placement when determining that termination was in her best interests. See *In re Olive/Metts*, 297 Mich App at 43. The trial court also considered the prospect of a guardianship but determined that adoption was in MM's best interests. Although the foster-care worker did not actively pursue a guardianship, the foster-care worker and the foster-care supervisor each testified that adoption would offer MM the permanency that a guardianship could not. Accordingly, although respondent argues on appeal that the least-restrictive means were not sought, the record does not demonstrate that a guardianship was in MM's best interests. See *In re Gonzales/Martinez*, 310 Mich App at 435.

Further, although the record demonstrates that MM loved respondent and that he loved her, there was not a reasonable likelihood that MM would be able to safely return to his care in the near future, if at all. See *Atchley*, 341 Mich App at 346-347. Therefore, the trial court did not err by finding that termination was in MM's best interests.

## C. REASONABLE EFFORTS

Finally, respondent argues that the trial court erred by finding that the DHHS made reasonable efforts toward reunification, which violated his right to due process. We disagree.

We review for clear error whether petitioner made reasonable efforts to preserve and reunify the family. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). Further, we review de novo as a question of constitutional law whether a child-protective proceeding afforded a parent due process. *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009).

The failure to properly notify a respondent of what was required in order to preserve parental rights may deprive a respondent of the "fundamental fairness" required for due process. *In re Walters*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369318); slip op at 8. Moreover, DHHS must make reasonable efforts to reunify a family before a parent's rights may be terminated. *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). See also MCL 712A.19a(2). However, there is "a commensurate responsibility on the part of [a respondent] to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). A respondent must "demonstrate sufficient compliance with or benefit from those services specifically targeted to address the primary basis for the adjudication." *Id.*

In this case, respondent argues that DHHS was not clear about what he needed to do; placed the child several hours away and failed to fully cover the cost of his travel expenses; and stopped providing services to him after the goal changed to adoption. We agree that there was some inconsistency in the record about what services respondent was required to participate in. However, respondent was aware of DHHS's focus on counseling and safety planning. Yet, he stopped individual counseling in September 2022 and neglected to set up family counseling with MM. DHHS then set up family counseling between them, but respondent delayed participating.

Regarding the safety plan, as discussed, respondent neglected to make one until May 2024. Moreover, the efficacy of the plan was immediately questionable when respondent failed to inform

DHHS that his girlfriend was arrested. Respondent also told a foster-care worker that he did not think that completing the workbook that the psychologist recommended was beneficial for him, demonstrating his reluctance to engage in treatment. The record therefore supports that DHHS was making reasonable efforts, and that respondent was not demonstrating sufficient compliance. See *In re Frey*, 297 Mich App at 248.

Before we conclude, though, we wish to highlight respondent's remaining argument that DHHS created an unreasonable travel burden when it placed MM so far away from him. The record clearly supports that DHHS failed to fully reimburse respondent for the significant amount of money he spent on gas during his lengthy trips to visit MM. This is very troubling—as noted by both the referee and the trial court in this case. If DHHS considered the far-away placement to be best for the child, then DHHS was required to provide respondent with gas money to ensure that he could attend his in-person parenting visits. Any harm caused to the child by respondent's inability to afford the trip is laid squarely at the feet of the DHHS. Therefore, DHHS's failure to provide necessary gas funds makes this issue a close call.

Ultimately, though, in addition to the efforts previously described, DHHS also engaged in other reunification efforts, including multiple home visits and referrals to a sex offender treatment program and a parenting class, neither of which respondent completed. Therefore, on the basis of a careful review of the entire record, we conclude there was no clear error in the trial court's determination that DHHS made reasonable efforts toward reunification.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado